| | |
|---|---|
| 1 | DUANE MORRIS LLP |
| 2 | Lorraine P. Ocheltree (SBN 151791)<br>LPOcheltree@duanemorris.com |
| 3 | Maryam Maleki (SBN 283189) (*application pending*)<br>mmaleki@duanemorris.com |
| 4 | Spear Tower<br>One Market Place, Suite 2200<br>San Francisco, California 94105-1127 |
| 5 | Telephone: (415) 957-3080<br>Facsimile: (415) 957-3001 |
| 6 | |
| 7 | DUANE MORRIS LLP<br>Gerald L. Maatman (IL 6181016) (*pro hac vice motion to follow*) |
| 8 | gmaatman@duanemorris.com<br>Jennifer A. Riley (IL 6272366) (*pro hac vice motion to follow*) |
| 9 | jariley@duanemorris.com<br>Tyler Z. Zmick (IL 6324901) (*pro hac vice motion to follow*) |
| 10 | tzzmick@duanemorris.com<br>190 S. LaSalle Street, Suite 3700 |
| 11 | Chicago, Illinois 60603<br>Telephone: (312) 499-6700 |
| 12 | Facsimile: (312) 279-6780 |
| 13 | Attorneys for Defendants<br>KELLY SERVICES GLOBAL, LLC and |
| 14 | KELLY SERVICES USA, LLC |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 18 | SAMY BAZINE, on behalf of himself and all others similarly situated, | Case No. _____ 22-CV-07170 |
| 19 | | **KELLY DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT** |
| 20 | Plaintiff, | |
| 21 | v. | |
| 22 | | [Removed from Santa Clara County Superior Court, Case No. 22CV404025] |
| 23 | KELLY SERVICES GLOBAL, LLC, a Michigan limited liability company; | |
| 24 | KELLY SERVICES USA, LLC, a Michigan limited liability company; MEDI | [*Filed concurrently with Civil Case Cover Sheet; Corporate Disclosure; Certificate of Interested Persons; Declaration of Terri Ministrelli; and Joinder of Defendant Medi Mall, Inc. in Notice of Removal*] |
| 25 | MALL, INC., a North Carolina corporation; and DOES 1 through 50, | |
| 26 | inclusive, | |
| 27 | | |
| 28 | Defendants. | |

KELLY DEFENDANTS' NOTICE OF REMOVAL

82045689v.1

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants KELLY SERVICES GLOBAL, LLC and KELLY SERVICES USA, LLC (collectively, "Kelly" or the "Kelly Defendants") hereby remove the above-captioned case from the Superior Court of the State of California, County of Santa Clara, to the United States District Court for the Northern District of California, asserting original jurisdiction under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453.[1]

## I.  BACKGROUND

1. On October 6, 2022, Plaintiff Samy Bazine ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Santa Clara, entitled *Samy Bazine v. Kelly Services Global, LLC, et al.*, Case Number 22CV404025. Plaintiff asserts a single cause of action against Kelly Services Global, LLC, Kelly Services USA, LLC, and Medi Mall, Inc. (collectively, "Defendants") for an alleged violation of the Unfair Competition Law (the "UCL"), California Business and Professions Code section 17200, *et seq.* (*See* Ex. A, Compl. ¶¶ 41-56.)

2. Plaintiff premises his UCL claim on Defendants' alleged violations of the California Labor Code. He claims that Defendants violated the Labor Code by: (1) failing to provide Plaintiff with meal and/or rest periods in accordance with California law; (2) failing to pay Plaintiff premium wages for missed meal and/or rest periods; (3) failing to pay Plaintiff premium wages for missed meal and/or rest periods at the regular rate of pay; (4) failing to pay Plaintiff at least minimum wage for all hours worked; (5) failing to pay Plaintiff overtime and double time wages at the correct rate by failing to include all applicable remuneration in calculating the regular rate of pay; (6) failing to reimburse Plaintiff for all necessary business expenses; and (7) failing to pay Plaintiff all final wages following separation of his employment. (*See, e.g., id.* ¶ 1.)

---

[1] Kelly first removed this action to the U.S. District Court for the Northern District of California on November 10, 2022. (*See* Case No. 3:22-mc-80304 (N.D. Cal.).) Because Kelly mistakenly opened the matter as a new miscellaneous matter (rather than a new civil case) through the Court's ECF system when filing its notice of removal on November 10, 2022, Kelly is re-filing its notice of removal and accompanying documents in this civil case.

3. In the Complaint, Plaintiff seeks to certify a putative class (the "UCL Class") consisting of "[a]ll individuals employed by Defendants directly or indirectly, whether through any staffing agencies and/or any other third parties in hourly or non-exempt positions in California during the **Relevant Time Period**." (*Id.* ¶ 11.)  Plaintiff defines the "Relevant Time Period" as "the time period beginning four years prior to the filing of this action until judgment is entered," (*id.*) – *i.e.*, October 6, 2018 to present.

4. On October 11, 2022, Kelly Services Global, LLC's registered agent for service of process, via personal service, received copies of the Service of Process Transmittal from CT Corporation, Process Server Delivery Details form, Summons, Complaint, and Civil Cover Sheet.  (*See* Declaration of Terri Ministrelli ("Ministrelli Decl.") ¶ 7.)  A true and correct copy of this service packet is attached as **Exhibit A** to the Declaration of Terri Ministrelli ("**Exhibit A**").  (*Id.*)

5. On October 20, 2022, Kelly Services USA, LLC's registered agent for service of process, via personal service, received copies of the Service of Process Transmittal from CT Corporation, Process Server Delivery Details form, Summons, Complaint, and Civil Cover Sheet.  (*See* Ministrelli Decl. ¶ 8.)  A true and correct copy of this service packet is attached as **Exhibit B** to the Declaration of Terri Ministrelli ("**Exhibit B**").  (*Id.*)

6. The Santa Clara County Superior Court's electronic docket indicates that the Superior Court scheduled a Case Management Conference for February 16, 2023 at 2:30 p.m. in Department 1, located at 191 North First Street, San Jose, California 95113.  Other than the February 16, 2023 Case Management Conference, the electronic docket for the Santa Clara County Superior Court does not indicate that any other proceedings are scheduled in the Superior Court.

**II.   TIMELINESS OF REMOVAL**

7. This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty (30) days of service upon a Kelly Defendant.  *See* 28 U.S.C. § 1446(b) & (c)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 353-56 (1999) (thirty-day removal period begins when defendant is formally served).

### III. ALL DEFENDANTS CONSENT TO REMOVAL

8. Consent of Kelly's co-defendant, Medi Mall, is not required under 28 U.S.C. § 1332(d). *See* 28 U.S.C. § 1453(b). Nonetheless, Medi Mall, the only named defendant other than the Kelly Defendants, consents to removal. (*See* Ex. 1, Joinder of Defendant Medi Mall, Inc. in Notice of Removal of Action.)

### IV. CLASS ACTION FAIRNESS ACT REMOVAL

9. This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part at 28 U.S.C. § 1332(d)(2), as: (1) the action involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (d)(5), & (d)(6).

#### A. The Putative Class Exceeds 100

10. The number of putative class members in this action is greater than 100. 28 U.S.C. § 1332(d)(5)(B). Indeed, Plaintiff's alleged employer(s), KSG, has employed approximately 29,773 hourly non-exempt employees in the State of California during the relevant time period. (*See* Ministrelli Decl. ¶ 11.)

#### B. Plaintiff And The Kelly Defendants Are Minimally Diverse

11. CAFA requires only minimal diversity for purposes of establishing federal jurisdiction. That is, at least one putative class member must be a citizen of a state different from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A). In this case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of the Kelly Defendants (both of which are citizens of Michigan).

##### 1. Plaintiff Is A Citizen Of California

12. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). Citizenship is determined by the individual's

domicile at the time the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

13. Plaintiff alleges that he is "an individual residing in the State of California." (Ex. A, Compl. ¶ 4.) In addition, based on Company records, Plaintiff was a resident of California throughout the period of his employment with KSG. (Ministrelli Decl. ¶ 9.) For instance, when Plaintiff began his employment with KSG, Plaintiff provided KSG with a home address in Los Angeles, California. (*Id.*) Additionally, the mailing address reflected on Plaintiff's paystubs throughout his employment with KSG is in Los Angeles, California. (*Id.*) Accordingly, on information and belief following a reasonable investigation, Plaintiff is a citizen of California.

### 2. Defendant Kelly Services Global, LLC Is Not A Citizen Of California

14. Plaintiff names Kelly Services Global, LLC as one of three Defendants. As a general rule, a limited liability company is a citizen of every state of which its members are citizens. *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations. Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction. . . . [A]n LLC is a citizen of every state of which its owners/members are citizens.").

15. For purposes of CAFA's minimal diversity requirement, however, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

16. A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010). In *Hertz*, the U.S. Supreme Court held that the "principal place of business" of a corporation is best

interpreted as a corporation's "nerve center," which "ordinarily equates . . . with a corporation's headquarters." *Id.* The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192-93; *see id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

17. For removal purposes, citizenship is measured both when the action is filed and when it is removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter*, 265 F.3d at 857.

18. At all times since Plaintiff commenced this lawsuit, Kelly Services Global, LLC has been a limited liability company formed under the laws of the State of Michigan with its principal place of business in the State of Michigan. (Ministrelli Decl. ¶¶ 3-4.) Kelly Services Global, LLC has maintained its corporate headquarters in Troy, Michigan. (*Id.* ¶ 4.) Its corporate executives, including its senior leadership team, have been and continue to be located in Michigan, have maintained and continue to maintain their offices in Michigan, and have performed and continue to perform their primary duties and job functions in Michigan. (*Id.*) Because Kelly Services Global, LLC was formed under the laws of the State of Michigan and maintains its principal place of business in the State of Michigan, it is not a citizen of the State of California.

19. Accordingly, CAFA's diversity requirement is satisfied because at least one class member—here, Plaintiff—and Defendant Kelly Services Global, LLC are citizens of different states.

### 3. Defendant Kelly Services USA, LLC Is Not A Citizen Of California

20. Plaintiff names Kelly Services USA, LLC as one of three Defendants.

21. At all times since Plaintiff commenced this lawsuit, Kelly Services USA, LLC has been a limited liability company formed under the laws of the State of Michigan with its principal place of business in the State of Michigan. (Ministrelli Decl. ¶¶ 5-6.) Kelly Services USA, LLC has maintained its corporate headquarters in Troy, Michigan. (*Id.* ¶ 6.) Its corporate executives, including its senior leadership team, have been and continue to be located in Michigan, have maintained and continue to

maintain their offices in Michigan, and have performed and continue to perform their primary duties and job functions in Michigan. (*Id.*) Because Kelly Services USA, LLC was formed under the laws of the State of Michigan and maintains its principal place of business in the State of Michigan, it is not a citizen of the State of California.

22. Accordingly, CAFA's diversity requirement is satisfied because at least one class member—here, Plaintiff—and Defendant Kelly Services USA, LLC are citizens of different states.

### 4.     Doe Defendants Have No Bearing On Diversity Jurisdiction

23. Pursuant to 28 U.S.C. §§ 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. *See, e.g., Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant."). Thus, the existence of Doe Defendants 1 through 50 does not deprive this Court of jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

### C.    The Amount In Controversy Exceeds The Statutory Minimum

24. Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be

read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

25.  To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must only make a plausible claim that the amount in controversy exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014). Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020). As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id.* (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)).

26.  While the Kelly Defendants deny any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs. The Kelly Defendants base all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein), assuming, without any admission, the truth of the allegations (which the Kelly Defendants dispute). Likewise, the Kelly Defendants base these calculations on the putative class alleged in the Complaint, and in no way indicate or concede that class treatment is appropriate in this case, that Plaintiff has standing to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. The Kelly Defendants expressly reserve the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's class definition, Plaintiff's ability to meet the requirements of Rule 23, and the calculation of damages or any other monetary relief in all respects.

27.  Because Plaintiff has not alleged a particular dollar figure regarding the relief sought, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015). Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate. *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal.

2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

28.     As the U.S. Supreme Court has explained, a defendant's amount-in-controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88.  As a result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction.  *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (holding that affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.").

29.     Here, Plaintiff asserts a single count based on Defendants' alleged violation of the UCL. "Plaintiffs who prevail under the UCL are generally limited to injunctive relief and restitution.  Plaintiffs may not receive damages . . . or attorneys fees." *Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.*, 2018 WL 7286502, at *5 (N.D. Cal. July 11, 2018) (internal quotation marks and citation omitted). In this case, Plaintiff theoretically can recover monetary relief for nine of the ten alleged Labor Code violations (*see* Ex. A, Compl. ¶ 1) – specifically, Plaintiff can recover restitutionary relief in the form of: (i) premiums owed due to Defendants' alleged failure to provide Plaintiff with meal and/or rest periods (*see id.* ¶ 1(1)-(4)); (ii) unpaid wages due to Defendants' alleged failure to pay Plaintiff minimum wage for all hours worked (*see id.* ¶ 1(5)); (iii) unpaid wages due to Defendants' alleged failure to pay overtime and double time wages at the correct regular rate "by failing to include all applicable remuneration in calculating the regular rate of pay" (*see id.* ¶¶ 1(6)-(8)); and (iv) unpaid wages due to Defendants' alleged failure to reimburse Plaintiff for all necessary business expenditures (*see id.* ¶ 1(9)). The only alleged Labor Code violation for which Plaintiff cannot recover monetary relief under the UCL is Defendants' alleged failure to pay Plaintiff and putative class members "all of their final wages

following separation of employment." (*Id.* ¶ 1(10)); *see, e.g.*, *Harris v. Best Buy Stores, L.P.*, 2016 WL 4073327, at *10 (N.D. Cal. Aug. 1, 2016), *on reconsideration,* 2016 WL 6248893 (N.D. Cal. Oct. 26, 2016) (noting "UCL claim may not rely on § 203 as a basis").

### 1. Minimum Wage Violations and Overtime Violations Claims

30. Plaintiff seeks payment for unpaid wages and alleged overtime violations as a result of Defendants' purported "policies and practices" of not paying Plaintiff and putative class members "for all hours worked." (Ex. A, Compl. ¶ 27; *see also id.*, Prayer for Relief ¶ 1(4).) Specifically, Plaintiff alleges that "Defendants directed, permitted, or otherwise encouraged Plaintiff and the putative class members to perform off-the-clock work." (*Id.* ¶ 20; *see also, e.g., id.* ¶ 21 (alleging time Plaintiff worked was "not accurately recorded by the timekeeping system utilized by Defendants and therefore resulted in the failure to pay Plaintiff . . . for all hours actually worked and overtime and/or double time compensation"); *id.* (alleging Plaintiff and putative class members were required to "show up a day before their demo started and spend approximately three (3) to four (4) hours setting up the demo area for the workday ahead" and that they were not paid for such time); *id.* ("[O]nce their demo was completed, typically on a Sunday, Plaintiff and putative class members also had to stay an extra three (3) hours putting away the demo before they could leave. . . ."); *id.* (alleging Plaintiff and putative class members "routinely worked more than seven (7) days in a row without being paid any overtime and/or double time as required by law"); *id.* ¶ 22 ("Plaintiff and the putative class members regularly performed work before and after their scheduled work hours and were not paid for this time. Plaintiff and the putative class members were instructed to put up and take down their demo area before they had clocked in and after they had already clocked out and were not paid for the time spent performing these additional duties."); *id.* ¶ 35 (alleging Defendants failed to correctly pay Plaintiff and putative class members for overtime by "not correctly calculating their regular rates of pay to include all applicable remuneration").)

31. California Labor Code section 1194 permits "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Such amounts "are recoverable as restitution under the UCL," despite

1. damages being unavailable under the statute. *See, e.g.*, *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014).

32. While the statute of limitations for recovery for minimum wage and overtime violations under Labor Code section 1194 is three years, Cal. Civ. Proc. Code § 338, in this case Plaintiff alleges a claim for pay as part of his UCL claim. (*E.g.*, Ex. A, Compl. ¶ 51.) According to the allegations of his Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Accordingly, the proposed class period for Plaintiff's minimum wage and overtime claims is from **October 6, 2018 to present**.[2]

33. The Complaint is silent as to the amount of alleged unpaid wages and overtime, thereby precluding precise estimates of the amount in controversy. (*See* Ex. A, Compl. ¶ 51; *id.*, Prayer for Relief ¶ (4)); *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007). Plaintiff does, however, allege that Kelly failed to pay all wages and overtime owed in accordance with Kelly's purported "policies and practices" (Compl. ¶ 27; *see also id.* ¶ 48), that Plaintiff and putative class members "regularly" worked more than eight hours a day and more than 40 hours per week, and that Plaintiffs and putative class members "regularly" worked "before and after their scheduled work hours" without being paid (*id.* ¶ 22).

34. During the relevant time period identified in the Complaint, there were approximately 29,773 current and former non-exempt hourly employees who are or were employed by Kelly in California. (Ministrelli Decl. ¶ 11.) These 29,773 current and former employees worked a total of approximately 611,177 workweeks. (*Id.*) The average hourly rate of pay for these individuals from October 6, 2018 to November 6, 2022, is approximately $22.57, and the average hourly overtime rate of pay for these individuals from October 6, 2018, to November 6, 2022, is approximately $33.86. (*Id.* ¶ 12.)

35. Although Kelly denies that Plaintiff (or any putative class member) is entitled to any unpaid wages, assuming 60 minutes of unpaid wages (30 of those minutes calculated at the average

---

[2] Kelly acknowledges that the Complaint asserts only a single count under the UCL and that Plaintiff does not formally assert distinct "claims" based on alleged wage-and-hour violations; rather, such alleged violations comprise part of his UCL claim. Kelly uses the term "claim" in this removal notice to refer to each alleged violation of the California Labor Code set forth in the Complaint.

hourly rate and the other 30 minutes calculated at the average overtime rate) per week for only 40% of the 29,773 putative class members, the amount in controversy would be approximately **$6,897,743.62** [(611,177 Total Work Weeks * 0.5 hours * $22.57 Average Hourly Rate) + (611,177 Total Work Weeks * 0.5 hours * $33.86 Average Hourly Overtime Rate) * 40% = $6,897,743.62].

36. **Assuming 50%** of the putative class were underpaid, the amount in controversy would be approximately **$8,622,179.50** [(611,177 Total Work Weeks * 0.5 hours * $22.57 Average Hourly Rate) + (611,177 Total Work Weeks * 0.5 hours * $33.86 Average Hourly Overtime Rate) * 50% = $8,622,179.50].

37. **Assuming 60%** of the putative class were underpaid, the amount in controversy would be approximately **$10,346,615.40** [(611,177 Total Work Weeks * 0.5 hours * $22.57 Average Hourly Rate) + (611,177 Total Work Weeks * 0.5 hours * $33.86 Average Hourly Overtime Rate) * 60% = $10,346,615.40].

38. Accordingly, the amount in controversy regarding Plaintiff's minimum wage and overtime claims is between approximately **$6,897,743.62** and **$10,346,615.40**.

39. Although Kelly denies Plaintiff's allegations, these are conservative estimates for purposes of calculating the amount in controversy under CAFA removal. Indeed, the Ninth Circuit and numerous district courts have held that an estimate of at least 30 minutes per class member per week is appropriate in light of Plaintiff's allegations. *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity."); *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding estimate of one hour per class member per week appropriate where plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assume[d] that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D.

Cal. 2014) (finding appropriate assumption that each class member is owed one hour of overtime compensation per week where complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where plaintiffs asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

### 2. Unpaid Meal Premiums Claim

40. Plaintiff alleges that he and the putative class members "were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) Defendants' policy of not scheduling each meal period as part of each work shift; (2) [Defendants] chronically understaffing each work shift with not enough workers; (3) [Defendants] imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) [Defendants having] no formal written meal and rest period policy that encouraged employees to take their meal and rest periods." (Compl. ¶ 28; *see also id.* ¶ 29 ("Defendants have a policy and/or practice of requiring Plaintiff and the putative class members to take their meal periods after the fifth hour of work. Also, Plaintiff and the putative class members were required to clock out for meal periods even though they continued to perform work with the full knowledge of their supervisors."); *id.* ¶ 30 (alleging Plaintiff and putative class members were "regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to complying with Defendants' productivity requirements").)

41. Based on these alleged violations of the Labor Code, Plaintiff seeks "premium wages" for the allegedly missed meal breaks. (*See, e.g., id.* ¶ 1(3).) Such premiums are considered restitutionary and therefore can be recovered in a UCL action. *See, e.g., Dawson v. Hitco Carbon Composites, Inc.*, 2017 WL 7806561, at *8-9 (C.D. Cal. Aug. 3, 2017) ("[A]n employee's interest in the meal period premium is not an expectancy, but an interest which vests as soon as the meal period is missed. If Plaintiff was denied meal and rest periods as he alleges, he has a vested ownership interest in the corresponding premiums."); *Lopez v. United Parcel Service, Inc.*, 2010 WL 728205, at *10 (N.D. Cal.

Mar. 1, 2010) (meal and rest break premiums are restitutionary because they are akin to payment of overtime wages to an employee and thus recoverable under the UCL).

42. California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512. Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

43. While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL. *See Falk*, 237 Cal. App. 4th at 1462, n.12 ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation."). Accordingly, the proposed class period for the unpaid meal period premium claim is from **October 6, 2018 to present**.

44. Kelly pays its non-exempt employees every week. (Ministrelli Decl. ¶ 13.) Accordingly, there are 52 pay periods per year. During the proposed class period, the putative class members worked a total of approximately 611,177 workweeks – *i.e.*, approximately 611,177 pay periods. (*Id.*)

45. Based on the allegations in the Complaint, assuming each putative class member is entitled to one hour of premium pay per each two-week period for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$6,897,121.16** ($22.57/hour x 305,588 weeks).

46. Kelly's estimate is conservative. Kelly assumes only one meal period violation for each two-week period, which is arguably less frequent than Plaintiff's allegation that he and putative class members were "*regularly* not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked" due to, *e.g.*, "Defendants' policy of not scheduling each meal period as part of each work shift" and "*chronically* understaffing each work shift with not enough workers." (Ex. A, Compl. ¶¶ 29-30 (emphases added).) In other words, if an employee worked 10 days during a two-week period, Kelly has conservatively calculated only a single meal period violation during that period.

### 3. Unpaid Rest Period Premiums Claim

47. According to the Complaint, Plaintiff and putative class members "were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendants' policy of not scheduling each rest period as part of each work shift; (2) [Defendants] chronically understaffing each work shift with not enough workers; (3) [Defendants] imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time; and (4) [Defendants maintaining] no formal written meal and rest period policy that encouraged employees to take their meal and rest period." (Compl. ¶ 31; *see also id.* ¶ 32 ("Defendants have a policy and/or practice of requiring Plaintiff and the putative class members to provide service promptly to customers regardless of whether or not they are on break."); *id.* ¶ 32 (asserting Plaintiff and putative class members "were systematically denied duty free rest breaks because there was no other person to cover their booth so they were forced to continue working regardless of whether or not they were on break").) As a result, Plaintiff claims that Defendants violated the Labor Code and seeks relief in the form of, *inter alia*, "premium wages for missed meal and/or rest periods." (*See, e.g., id.* ¶ 1(3).).

48. Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012). California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods. An employee is entitled to an additional

1  hour's wages per day, for both a rest and meal period violation each day. *Lyon*, 2010 WL 1753194 at
2  *4.

3        49.     While the statute of limitations for recovery for rest period premium pay under California
4  Labor Code § 226.7 is three years, *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code
5  section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of
6  limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for
7  restitution under the UCL. *See Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class
8  period for the unpaid rest period claim is from **October 6, 2018 to present**.

9        50.     Based on the allegations of the Complaint, assuming each putative class member is
10 entitled to one hour of premium pay per two-week period for the alleged nonprovision of rest periods,
11 the amount in controversy on this claim would equal no less than **$6,897,121.16** ($22.57/hour x 305,588
12 weeks).

13       51.     Kelly's estimate is conservative. Kelly assumes only one rest period violation for each
14 two-week period, which is arguably less frequent than Plaintiff's allegation that he and putative class
15 members were not provided with legally-compliant rest periods due to Defendants "***chronically***
16 understaffing each work shift with not enough coworkers," having a "policy and/or practice of requiring
17 Plaintiff and the putative class members to provide service promptly to customers regardless of whether
18 or not they are on break," and "***systematically*** den[ying] duty free rest breaks." (Ex. A, Compl. ¶¶ 31-32
19 (emphases added).) In other words, if an employee worked 10 days during a two-week period, Kelly has
20 conservatively calculated only a single rest period violation during that period.

21        **4.**     **Unreimbursed Business Expense Claim**

22       52.     Plaintiff claims he and putative class members "were required to utilize their own
23 personal cell phones and vehicles to perform their job duties" and "were not reimbursed for business
24 expenses incurred in using their cellphones and vehicles." (Ex. A, Compl. ¶¶ 36-37.) Plaintiff seeks to
25 recover from Kelly reimbursement for these expenditures incurred by himself and the putative class
26 members. (*See, e.g.*, *id.* ¶¶ 1(9), 50-51, 56.)

27       53.     Under California law, an employer has a statutory obligation to "indemnify his or her
28 employee for all necessary expenditures or losses incurred by the employee in direct consequence of the

15
KELLY DEFENDANTS' NOTICE OF REMOVAL
82045689v.1

discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Labor Code § 2802(a). Like amounts reflecting premiums for allegedly missed meal and rest breaks, plaintiffs may recover amounts for unpaid necessary business expenses under the UCL. *See, e.g.*, *Kooiman v. Siwell, Inc.*, 2022 WL 2287310, at *3 (C.D. Cal. June 23, 2022) (noting unreimbursed business expenses are considered restitution); *Harris*, 2016 WL 4073327, at *10 ("Plaintiff's UCL cause of action survives insofar as it relies on § 2802 violations as the predicate."); *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265, *4 (C.D. Cal. Mar. 1, 2013) ("Plaintiff seeks restitution for unpaid meal and rest periods and unreimbursed business expenses. These expenses are restitutionary and therefore recoverable under the UCL."); *Ordonez v. Radio Shack*, 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) ("The Court . . . concludes that the UCL claim may be maintained to the extent it is predicated on plaintiff's claim under Sections 221 and 2802."); *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, *4 (S.D. Cal. July 27, 2007) ("[T]he Court denies [defendants'] motion to dismiss Plaintiff's section 17200 claim based on the argument that unreimbursed business related expenses and improper deductions are unavailable as restitution . . . .").

54. While the statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years, Cal. Civ. Proc. Code § 338, the limitations period is extended to four years when a plaintiff seeks restitution for the Labor Code violations. *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the unreimbursed business expenses claim is from **October 6, 2018 to present**.

55. During the period of October 6, 2018 to November 6, 2022, there were approximately 29,773 potential class members, who worked a total of approximately 611,177 workweeks. (Ministrelli Decl. ¶ 11.) That number of weeks worked equates to approximately 141,050.85 total months worked (611,177 weeks worked x (12 months per year/52 weeks per year)).

56. Assuming each putative class member during the limitations period may recover cell phone expenses in the amount of $3 per month, the amount in controversy for the unpaid business expenses would equal no less than **$423,122.54** ($3/month x 141,050.85 months).

57. Kelly's estimate is conservative. For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions and from different providers. According to the U.S. Bureau of Labor Statistics, the average monthly cell phone services charge for the time period of October 2018 to September 2022 is approximately $47.33 per month. *See* U.S. Bureau of Labor Statistics, Databases, *Tables & Calculators by Subject: Wireless telephone services in U.S. city average, all urban consumers, not seasonally adjusted*, available at https://data.bls.gov/timeseries/CUUR0000SEED03?output_view=data (last accessed Nov. 7, 2022). Assuming employees use their cell phones for business purposes for only approximately 6.4% of the time during each month, their expenses would be approximately $3 per month.[3]

### 5. Approximate Aggregate Amount In Controversy, Exclusive Of Attorney's Fees

58. Although Kelly denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for the asserted claims, exclusive of attorneys' fees, is between approximately **$21,115,109 – $24,563,980**, calculated as follows:

| | |
|---|---|
| **$6,897,744 – $10,346,615** | Minimum Wage and Overtime Claims (40% to 60% of putative class members being unpaid) |
| **$6,897,121** | Unpaid Meal Period Premiums Claim |
| **$6,897,121** | Unpaid Meal Period Premiums Claim |
| **$423,123** | Unreimbursed Business Expense Claim |
| **$21,115,109 – $24,563,980** | Total |

59. The figures above do not take into account Plaintiff's claim for attorneys' fees or the monetary cost associated with Plaintiff's requested injunctive relief.

---

[3] The estimated amount in controversy for unreimbursed business expenses does not account for Plaintiff's claim that he was not reimbursed for costs incurred in using his vehicle for work. If Kelly accounted for such costs, the amount in controversy regarding Plaintiff's failure-to-reimburse claim would be even larger.

60. As set forth above, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement. Indeed, using a conservative estimate, the total amount in controversy is at least between **$21,115,109 – $24,563,980**.

## V. VENUE

61. Venue lies in the United States District Court for the Northern District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(a). This action originally was brought in the Santa Clara County Superior Court of the State of California, which is located within the Northern District of California. 28 U.S.C. § 84(a). Therefore, it is properly removed to this District.

## VI. NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF

62. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Santa Clara County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

## VII. PRAYER FOR REMOVAL

63. **WHEREFORE**, Defendants Kelly Services Global, LLC and Kelly Services USA, LLC pray that this civil action be removed from the Santa Clara County Superior Court of the State of California, to the United States District Court for the Northern District of California.

**DATED: November 15, 2022**

Respectfully submitted,

DUANE MORRIS LLP

By: /s/ *Lorraine Ocheltree*
Lorraine Ocheltree
Gerald L. Maatman, Jr.
Jennifer A. Riley
Maryam Maleki
Tyler Zmick
Attorneys for Defendants
KELLY SERVICES GLOBAL, LLC and
KELLY SERVICES USA, LLC