UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAMY BAZINE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KELLY SERVICES GLOBAL, LLC; KELLY SERVICES USA, LLC; and MEDI MALL, INC.,<br><br>Defendants. | Case No. 22-cv-07170-BLF<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; AND STAYING ACTION**<br><br>[Re: ECF 24] |

Plaintiff Samy Bazine ("Bazine") brings this putative class action against Defendants Kelly Services Global, LLC and Kelly Services USA, LLC (collectively, "Kelly"), and Defendant Medi Mall, Inc. ("Medi Mall"), asserting a single claim under California's unfair competition law ("UCL"), Cal. Bus. & Prof. Code § 17200. The UCL claim is grounded in alleged violations of California's wage and hour laws by Kelly and Medi Mall (collectively, "Defendants").

Kelly has filed a motion to compel arbitration and dismiss, or in the alternative, stay the litigation pending completion of arbitration. *See* Mot., ECF 24. The motion is joined by Medi Mall and opposed by Bazine. *See* Joinder, ECF 26; Opp. ECF 27. For the reasons discussed below, the motion to compel arbitration is GRANTED and the action is STAYED pending completion of arbitration.

## I. BACKGROUND

Defendant Kelly is a Michigan-based temporary employment agency that operates throughout the United States. *See* Stanton Decl. ¶¶ 4-5, ECF 24-1. Kelly uses an online eRegistration process for onboarding Kelly temporary employee ("KTE") applicants. *See id.* ¶ 5. "Kelly's eRegistration process is a standardized process through which applicants complete an employment application, releases for drug screening and reference checks, a 'Dispute Resolution and Mutual Agreement to Binding Arbitration' form ('Arbitration Agreement'), Form W-4, Employee Handbook Acknowledgment, Kelly Handbook, Direct Deposit pay options, and other hiring and onboarding forms." *Id*. ¶ 6.

Plaintiff Bazine, a California resident, completed Kelly's eRegistration process twice, the first time on October 10, 2018, and the second time on July 17, 2020. *See id.* Stanton Decl. ¶¶ 16-26; Bazine Decl. ¶¶ 1, 6. During each registration, Bazine electronically signed a version of Kelly's Arbitration Agreement. *See* Stanton Decl. Exs. B (2020 Arbitration Agreement) & D (2018 Arbitration Agreement). The two versions, referred to herein as the 2020 Arbitration Agreement and the 2018 Arbitration Agreement, are substantially similar with one significant difference, as highlighted below.

Both versions of the Arbitration Agreement contain the following language:

> **1. Agreement to Arbitrate.** Kelly Services, Inc. and its subsidiaries ("Kelly" or "Kelly Services") and I agree to use binding arbitration, instead of going to court, for any "Covered Claims" that arise between me and Kelly Services, its related and affiliated companies, and/or any current or former employee of Kelly Services or any related or affiliated company. I understand and agree that this Agreement is intended by the parties to be enforceable by me and Kelly, and the rights and obligations under this Agreement directly apply to and benefit me and Kelly Services, Inc. and its subsidiaries, regardless of which of those entities signs this Agreement. This Agreement will survive and apply to any and all periods of employment or re-employment with Kelly Services.

2020 Arbitration Agreement ¶ 1; 2018 Arbitration Agreement ¶ 1. As relevant here, "Covered Claims" that are subject to arbitration include "all common-law and statutory claims relating to my employment, including, but not limited to, any claim for . . . unpaid wages. . . ." 2020 Arbitration Agreement ¶ 2; 2018 Arbitration Agreement ¶ 2. "Covered Claims" do not include unfair competition claims. 2020 Arbitration Agreement ¶ 3; 2018 Arbitration Agreement ¶ 3.

2

1    Both the 2020 Arbitration Agreement and the 2018 Arbitration Agreement provide that
2 "[t]he employment dispute resolution rules of the American Arbitration Association ('AAA')
3 effective at the time of filing will apply, a copy of which is available at all times on MyKelly.com
4 or upon request from your Kelly Representative." 2020 Arbitration Agreement ¶ 4; 2018
5 Arbitration Agreement ¶ 4. Both versions state that the Arbitration Agreement will be governed
6 by the Federal Arbitration Act and, for California applicants and employees, by the California
7 Arbitration Act as well. 2020 Arbitration Agreement ¶ 4 & n.1; 2018 Arbitration Agreement ¶ 4
8 & n.1. Finally, both versions specify that any disputes related to Bazine's employment
9 relationship with Kelly Services will be governed by Michigan law. 2020 Arbitration Agreement
10 ¶ 5; 2018 Arbitration Agreement ¶ 5.

11    There is one significant difference between the two versions of the Arbitration Agreement,
12 as the 2020 Arbitration Agreement contains the following language that is not included in the
13 2018 Arbitration Agreement: "This Agreement is not mandatory for people who reside or work in
14 California, and if I work or reside in California, I understand that the decision to sign this
15 Agreement to Arbitrate is entirely my own, and that neither my hiring nor continued employment
16 with Kelly is conditioned upon signing this Agreement to Arbitrate." 2020 Arbitration Agreement
17 ¶ 1.

18    Bazine did not exercise his right to decline the 2020 Arbitration Agreement when he
19 registered with Kelly on July 17, 2020, and he signed the 2020 Arbitration Agreement as part of
20 that registration process. *See* Stanton Decl. ¶¶ 24-25. On July 29, 2020, Kelly placed Bazine in a
21 temporary position with Medi Mall. *See id*. ¶ 27. Bazine's assignment with Medi Mall began on
22 July 29, 2020, and he provided services to Medi Mall until his assignment ended on February 24,
23 2021. *See id*.

24    Bazine filed the complaint in this action in the Santa Clara County Superior Court on
25 October 6, 2022, asserting a single UCL claim against Kelly and Medi Mall. *See* Compl., ECF 2-
26 1. Bazine alleges that Kelly and Medi Mall are liable under California's UCL due to their
27 violations of California wage and hour laws governing minimum wages, overtime pay, meal and
28 rest periods, and business expenses. *See id*. ¶¶ 1, 40-57. He seeks appointment as the class

1 representative for a putative class defined as "All persons employed by Defendants directly or
2 indirectly, whether through any staffing agencies and/or any other third parties in hourly or non-
3 exempt positions in California during the Relevant Time Period." *Id*. ¶ 11.  Kelly, with the
4 consent of Medi Mall, removed the complaint to federal district court pursuant to the Class Action
5 Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  *See* Not. of Removal, ECF 1.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") embodies a "national policy favoring arbitration and a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (internal quotation marks and citations omitted).  "The FAA, 9 U.S.C. § 1 *et seq.*, requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  The first of these issues is non-delegable and must be decided by the district court. *See Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 635 (9th Cir. 2021) ("[P]arties cannot delegate issues of formation to the arbitrator.").  However, "[i]t is well-established that some 'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement." *Id*. at 634.

"When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019).  "[I]ncorporation of the AAA rules constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." *Brennan*, 796 F.3d at 1130.

## III. DISCUSSION

Applying the legal standards set forth above, the Court first must determine whether the parties entered into an agreement to arbitrate.  Second, the Court must determine whether

4

1  questions of validity and arbitrability have been delegated to the arbitrator. Third, if those
2  questions have not been delegated to the arbitrator, the Court must decide them. The Court makes
3  these determinations in turn, below.

        **A.     Kelly and Bazine Entered into an Agreement to Arbitrate**

5          In determining whether an arbitration agreement exists, a district court applies "ordinary
6  state-law principles that govern the formation of contracts.'" *Reichert v. Rapid Invs., Inc.*, 56
7  F.4th 1220, 1227 (9th Cir. 2022) (internal quotation marks and citation omitted). Both the 2018
8  Arbitration Agreement and the 2020 Arbitration Agreement state that any disputes related to
9  Bazine's employment relationship with Kelly will be governed by Michigan law "regardless of
10 conflicts of law principles." 2020 Arbitration Agreement ¶ 5; 2018 Arbitration Agreement ¶ 5.
11 Bazine challenges the Michigan choice of law provision, arguing among other things that it runs
12 afoul of California Labor Code § 925, which prohibits an employer from depriving a California
13 employee of the substantive protection of California law with respect to a controversy arising in
14 California. *See* Cal. Lab. Code § 925(a)(2). Kelly concedes that the Michigan choice of law
15 provision cannot stand and thus is automatically severed under either version of the arbitration
16 agreement, providing that, "If any provision of this Agreement is determined to be unenforceable
17 or in conflict with a mandatory provision of applicable law, it shall be construed to incorporate
18 any mandatory provision and/or the unenforceable or conflicting provision shall be automatically
19 severed and the remainder of the Agreement shall not be affected." 2020 Arbitration Agreement ¶
20 16; 2018 Arbitration Agreement ¶ 16. The Court agrees with the parties that California law, rather
21 than Michigan law, applies.
22         "In California, [a] party petitioning the court to compel arbitration bears the burden of
23 proving by a preponderance of evidence the existence of an arbitration agreement." *Duval v.*
24 *Costco Wholesale Corp.*, No. 22-CV-02338-TSH, 2023 WL 3852694, at *2 (N.D. Cal. June 5,
25 2023). A defendant may meet this burden by submitting a copy of the arbitration agreement
26 bearing the plaintiff's electronic signature. *See id.* If the plaintiff challenges the validity of the
27 electronic signature, the defendant must establish by a preponderance of the evidence that the
28 electronic signature is authentic. *See id.* Kelly submits copies of the 2018 Arbitration Agreement

5

and the 2020 Arbitration Agreement, bearing Bazine's electronic signature. *See* Stanton Decl. Exs. B (2020 Arbitration Agreement) & D (2018 Arbitration Agreement). Bazine does not challenge the authenticity of his signature on those documents or otherwise dispute that he entered into the arbitration agreements.

The parties disagree as to which of the two arbitration agreements signed by Bazine governs the current dispute, the 2018 Arbitration Agreement or the 2020 Arbitration Agreement. Kelly contends that the 2020 Arbitration Agreement governs because it was signed during Bazine's most recent registration with Kelly, pursuant to which he was placed with Medi Mall. Bazine contends that the 2018 Arbitration Agreement governs, pointing to the following provision of the 2018 Arbitration Agreement:

> **15. Modification and Revocation.** This Agreement can be revoked or modified only by a writing signed by me and an authorized representative of Kelly Services, referencing this Agreement and stating an intent to revoke or modify it. I understand that this Agreement shall survive the termination of my employment and that, should Kelly Services rehire me at any time subsequent to any termination of my employment, this Agreement shall remain in full effect for subsequent periods of employment.

2018 Arbitration Agreement ¶ 15. The 2020 Arbitration Agreement contains the same provision. *See* 2020 Arbitration Agreement ¶ 15.

The two arbitration agreements are identical in several respects, but the 2020 Arbitration Agreement provides that agreement to arbitration is optional for California residents while the 2018 Arbitration Agreement does not include such a provision. *Compare* 2020 Arbitration Agreement ¶ 1 *with* 2018 Arbitration Agreement ¶ 1. "Where there is an inconsistency between two agreements both of which are executed by all of the parties, the later contract supersedes the former." *Frangipani v. Boecker*, 64 Cal. App. 4th 860, 863 (1998). Accordingly, the Court determines that the 2020 Arbitration Agreement supersedes the 2018 Arbitration Agreement.

Medi Mall is not a party to the 2020 Arbitration Agreement. However, a nonparty may "possess the right to compel arbitration" when the nonparty is a third-party beneficiary of the contract, a successor in interest to the contract, or an agent of a signatory. *See Britton v. Co-op Banking Grp.*, 4 F.3d 742, 745-47 (9th Cir. 1993). Here, Kelly asserts in the motion that Medi Mall may compel arbitration on several grounds, including that Medi Mall is a third-party

beneficiary of the 2020 Arbitration Agreement and that the complaint alleges that the defendants are agents of each other. *See* Mot. at 6. Bazine does not address that assertion in his opposition and therefore appears to concede Medi Mall's right to enforce the 2020 Arbitration Agreement. See *Sandoval v. Cnty. of Riverside*, No. 5:22-cv-01319-MEMF (GJSx), 2023 WL 3821806, at *5 (C.D. Cal. June 2, 2023) ("Sandoval fails to address this argument and, by his silence, appears to concede it."); *Lansdown v. Bayview Loan Servicing, LLC*, No. 22-CV-00763-TSH, 2023 WL 2934932, at *4 (N.D. Cal. Apr. 12, 2023) ("[A] failure to respond in an opposition to an argument constitutes waiver or abandonment[.]"); *Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it).

In light of the foregoing, the Court concludes that there is an agreement to arbitrate – the 2020 Arbitration Agreement – and that all Defendants properly may seek to compel arbitration under that agreement.

### B. The Question of Arbitrability is Delegated to the Arbitrator

Once the existence of an arbitration agreement has been determined, the next question is whether the parties' dispute falls within the scope of the agreement. Defendants contend that the UCL claim falls with the scope of "Covered Claims" that must be arbitrated, while Bazine contends that the UCL claim does not fall within the scope of arbitrable "Covered Claims" given express contractual language excluding unfair competition claims from the definition of "Covered Claims."

The parties may delegate the arbitrability question to the arbitrator, and when they do so, the Court lacks authority to decide arbitrability. *See Henry Schein*, 139 S. Ct. at 526 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."). Defendants argue that the 2020 Arbitration Agreement delegates the question of arbitrability to the arbitrator by means of the following language: "The employment dispute resolution rules of the American Arbitration Association ('AAA') effective at the time of filing will apply, a copy of which is available at all times on MyKelly.com or upon request from your Kelly Representative." 2020 Arbitration Agreement ¶ 4. "[I]ncorporation of the AAA rules

7

constitutes 'clear and unmistakable' evidence that the parties intended to delegate the arbitrability question to an arbitrator." *Brennan*, 796 F.3d at 1130. Accordingly, the Court finds that it is for the arbitrator to decide whether Bazine's UCL claim is subject to arbitration under the 2020 Arbitration Agreement.

Bazine advances several reasons why, in his view, the contractual language recited above does not adequately incorporate the AAA rules. First, he argues that the contractual language does not satisfy the California requirements for incorporation set forth in *Wolschlager v. Fid. Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784 (2003). *Wolschlager* states in relevant part as follows: "For the terms of another document to be incorporated into the document executed by the parties the reference must be clear and unequivocal, the reference must be called to the attention of the other party and he must consent thereto, and the terms of the incorporated document must be known or easily available to the contracting parties." *Id*. at 790. Bazine contends that the applicable AAA rules were not "known or easily available" at the time the arbitration agreement was entered, because the parties could not know what rules would be available when a demand for arbitration was filed. The Court finds this argument to be unpersuasive. The 2020 Arbitration Agreement clearly advises that it incorporates the AAA rules, and that Bazine could obtain a copy of the AAA rules at any time on MyKelly.com or upon request from Kelly. Bazine presents no evidence that the AAA rules have been modified in any material way that would affect the arbitrability question. The Court finds that the 2020 Arbitration Agreement effectively incorporates the AAA rules.

Second, Bazine argues that the AAA rules are not adequately incorporated because the arbitration agreement refers to the "employment dispute resolution rules of the American Arbitration Association" when the rules actually are called the "Employment Arbitration Rules and Mediation Procedures." The governing cases use the common shortened title of "AAA rules" when holding that incorporation is a sufficient delegation of arbitrability. *See, e.g., G.G. v. Valve Corp.*, 799 F. App'x 557, 558 (9th Cir. 2020) ("[T]he teenagers clearly and unmistakably agreed to arbitrate questions of arbitrability because the arbitration agreement incorporates AAA rules.'); *Brennan*, 796 F.3d at 1130 ("[W]e hold that incorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."). The Court finds

8

1  that the AAA are adequately identified and incorporated into the 2020 Arbitration Agreement.

2  Third, Bazine argues that incorporation of the AAA rules is not sufficient to delegate the
3  arbitrability question where one party to the arbitration agreement is an unsophisticated litigant.
4  In *Brennan*, the Ninth Circuit addressed the issue of sophistication in dicta:

> The issue of the sophistication of the parties was raised at oral argument. Our holding today should not be interpreted to require that the contracting parties be sophisticated or that the contract be "commercial" before a court may conclude that incorporation of the AAA rules constitutes "clear and unmistakable" evidence of the parties' intent. Thus, our holding does not foreclose the possibility that this rule could also apply to unsophisticated parties or to consumer contracts. Indeed, the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts.

*Brennan*, 796 F.3d at 1130-31.

In the wake of *Brennan*, district courts within the Ninth Circuit have split as to whether the sophistication of the parties to the arbitration agreement matters. Bazine cites cases in which the district courts declined to find that incorporation of the AAA rules constituted a clear and unmistakable agreement to delegate the arbitrability question where one party to the contract was unsophisticated. *See, e.g., MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1031 (N.D. Cal. 2022) (collecting cases). Defendants cite cases going the other way, holding that incorporation of the AAA rules was sufficient to delegate arbitrability regardless of the sophistication of the parties. *See, e.g., Patrick v. Running Warehouse*, LLC, No. 2:21-cv-09978-ODW (JEMx), 2022 WL 10584136, at *4 (C.D. Cal. Oct. 18, 2022) (collecting cases). This Court finds the cases cited by Defendants to be more persuasive, and therefore concludes that the 2020 Arbitration Agreement's incorporation of the AAA rules is sufficient to delegate the arbitrability question to the arbitrator, even accepting for purposes of this motion Bazine's self-characterization as "unsophisticated."

Bazine asserts that Kelly is collaterally estopped from asserting that unfair competition claims are excluded from the definition of "Covered Claims" subject to arbitration. That argument properly should be raised before the arbitrator. Bazine also argues that the 2018 Arbitration Agreement is procedurally and substantively unconscionable. As discussed above, the 2018 Arbitration Agreement was superseded by the 2020 Arbitration Agreement. Consequently, all of

Bazine's unconscionability arguments are immaterial. Moreover, where arbitrability has been delegated to the arbitrator, any challenge to the arbitration agreement based on unconscionability is for the arbitrator to address, unless the unconscionability challenge is directed specifically to the delegation provision. *See Brennan*, 796 F.3d at 1133; *Bell v. Redfin Corp.*, No. 20-CV-2264-AJB-AGS, 2021 WL 5444791, at *5 (S.D. Cal. Aug. 12, 2021). Bazine's counsel stated at the hearing that the unconscionability challenge was directed to the arbitration agreement as a whole and not specifically to the delegation provision. Thus, the challenge properly is directed to the arbitrator.

### C. Conclusion

For the reasons discussed above, Defendants' motion to compel arbitration is GRANTED. The Court elects to stay, rather than dismiss, the complaint pending arbitration. However, the Court will direct the Clerk to administratively close the case. Either party may request that the case be reopened after arbitration, if appropriate.

### IV. ORDER

(1) Defendants' motion to compel arbitration is GRANTED.

(2) The parties SHALL commence arbitration within 60 days of the date of this order, or show cause why they have not done so.

(3) The case is STAYED pending arbitration.

(4) The Clerk SHALL administratively close the case; and

(5) This order terminates ECF 24.

Dated: June 21, 2023

_____
BETH LABSON FREEMAN
United States District Judge